UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELAINYA BELL, on behalf of others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>DEVRY UNIVERSITY, INC., et al.,<br><br>                                    Defendants. | Case No.:  24-cv-2464-RSH-BLM<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND AND MOTION TO CONSOLIDATE**<br><br>[ECF Nos. 9, 17] |

Before the Court is a motion to remand filed by Plaintiff Delainya Bell and motion to consolidate filed by Defendant DeVry University ("DeVry"). ECF Nos. 9, 17. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motions presented appropriate for resolution without oral argument. For the reasons below, the Court grants Plaintiff's motion and denies Defendant's motion.

## I.   BACKGROUND

### A.   Plaintiff's Allegations

The instant case is a putative wage and hour class action filed against DeVry. Plaintiff's Complaint alleges as follows.

///

Plaintiff worked as an Admissions Advisor for Defendant from October 2023 to August 2024. ECF No. 1-2, Ex. A ("Compl.") ¶ 11. Plaintiff alleges Defendant failed to accurately track the hours she and other class members worked, instead improperly implementing a non-neutral rounding policy that resulted in unpaid minimum and overtime wages and insufficient credit for accrued sick leave. *Id.* ¶¶ 26, 28–30. As a result, Defendant also allegedly failed to provide Plaintiff and other aggrieved employees with accurate wage statements. *Id.* ¶¶ 36–38 Finally, Plaintiff claims that she and other class members incurred unreimbursed costs related to being required to work from home. *Id.* ¶¶ 32–35.

Plaintiff seeks to represent two classes consisting of: (1) current and former non-exempt employees who worked for Defendant in California four years prior to the filing of the action through the date of class certification; and (2) current and former non-exempt employees who worked for Defendant in California four years prior to the filing of the action through the date of class certification "who were not properly reimbursed for business expenses." *Id.* ¶ 17.

### B.    Procedural Background

On November 21, 2024, Plaintiff initiated the instant putative class action in San Diego Superior Court. *See* Compl. Plaintiff brings seven claims for violations of the California Labor Code, alleging: (1) failure to pay all wages owed; (2) failure to pay all overtime wages; (3) paid sick leave violations; (4) untimely payment of wages; (5) wage statement violations; (6) waiting time penalties; and (7) failure to reimburse business expenses. *Id.* ¶¶ 40–69. Plaintiff also asserts a claim for unfair competition under California Business and Professions Code § 17200 *et seq. Id.* ¶¶ 70–75.

On December 26, 2024, Defendant removed the case to this Court under the Class Action Fairness Act ("CAFA"). ECF No. 1. On March 13, 2025, Plaintiff filed the instant motion to remand. ECF No. 9. Defendant filed a response and Plaintiff filed a reply. ECF Nos. 13; 14.

///

On January 23, 2025, Plaintiff filed a representative California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, action against Defendant in California Superior Court. *See Bell v. DeVry University, Inc. et al*, 25cv595-RSH-BLM case ("*DeVry II*"), ECF No. 1-4 On March 13, 2025, Defendant removed *DeVry II* to federal court. *DeVry II*, ECF No. 1. On May 9, 2025, Defendant filed a motion to consolidate the instant case with *DeVry II*. ECF No. 17.

## II.    LEGAL STANDARD

"The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). Under 28 U.S.C.S. § 1441, "only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see* 28 U. S. C. § 1441(a). "[R]emovability is generally determined as of the time of the petition for removal[.]" *Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th Cir. 1988).

The Class Action Fairness Act "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. §§1332(d)(2), (5)(B)). "The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Wash. State v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014).

## III.    ANALYSIS

### A.    Amount in Controversy

In this case, the Parties do not dispute whether CAFA's jurisdictional requirements of minimum diversity and class numerosity have been met. *See* ECF Nos. 9-1; 13; 14.

Instead, they focus on whether the amount in controversy in this case exceeds CAFA's $5,000,000 jurisdictional threshold.

### 1. Generally

To satisfy CAFA's amount-in-controversy requirement, "a removing party must initially file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 89). "[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *Id.*

"Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Lewis*, 627 F.3d at 399 (internal quotation marks omitted). "Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. However, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

"While the defendant's amount-in-controversy estimate must be grounded in the plaintiff's complaint, the parties' additional evidence may include 'affidavits or declarations, or other summary-judgment-type evidence relevant to the amount-in-controversy at the time of removal.'" *Campbell v. SkyWest Airlines, Inc.*, No. 3:24-CV-2141 TWR (SBC), 2025 WL 720188, at *3 (S.D. Cal. Mar. 6, 2025) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). Although the removing party may rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," the "reasoning and underlying assumptions" must be "reasonable." *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993 (9th Cir. 2022) (internal quotation marks omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture[.]" *Ibarra*, 775 F.3d at 1197.

    "Because the Court evaluates a challenged amount-in-controversy estimate under the preponderance of the evidence standard, the defendant need only establish 'that the potential damage *could* exceed the jurisdictional amount.'" *Campbell*, 2025 WL 720188, at *3 (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Nevertheless, "if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

                  2.     *Differences in Defendant's Notice of Removal and Opposition*

    The Court first notes the differences in how Defendant calculated the amount of controversy in its Notice of Removal as opposed to its Opposition to Plaintiff's Motion to Remand. *Compare* ECF No. 1 at 4–8 *with* ECF No. 13 at 16–17. In its Notice of Removal, Defendant asserts the total amount in controversy is at minimum $10,552,636.80 consisting of $2,366,412 in unpaid minimum wages, $2,275,852 in waiting time penalties, $4,151,600 in untimely payment penalties, and $ 1,758,772.80 in attorneys' fees. ECF No. 1 at 4–8. In contrast, in its Opposition, Defendant asserts the total amount in controversy is at minimum $5,023,066 consisting of $328,638 in unpaid minimum wages, $762,528 in waiting time penalties, $3,231,900 in untimely payment penalties, and $700,000 in attorneys' fees. ECF No. 13 at 16–17.

    Plaintiff argues that the Court should consider the calculations in the original notice and remand the case accordingly. ECF No. 14 at 5. Under Ninth Circuit precedent, however, a court may construe an opposition as an amendment to an original notice of removal. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 fn. 1 (9th Cir. 2002) (district court did not err in construing defendant's opposition as an amendment to its notice of removal); *Bratton v. FCA US LLC*, No. 17-CV-01458-JSW, 2017 WL 11687946, at *7 (N.D. Cal. June 22, 2017) ("[I]t is well established that a defendant may amend a deficient notice of removal through its opposition to a motion to remand."). Nevertheless, after the thirty-day

period of removal, a notice of removal "cannot be thereafter amended to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made." *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969).

Here, Defendant has not changed its grounds for removal—CAFA. *Compare* ECF No. 1 *with* ECF No. 13. Likewise, the evidence Defendant relies upon to support removal has remained consistent: the number of non-exempt employees working through the class period, their average base hourly rate, the number of workweeks at issue, and an assumption as to violation rate. While the figures Defendant uses have changed, "[a]llowing defendants to expand their analysis as to why the amount in controversy has been met in their opposition brief is fully consistent with other cases that have allowed defendants to correct factual deficiencies in their notices of removal by providing supplemental argument and evidence in connection with an opposition to a motion to remand." *Tripp v. Crossmark, Inc.*, No. 13-CV-03480-WHO, 2013 WL 5496550, at *2 (N.D. Cal. Oct. 3, 2013) (collecting cases); *see also Mendoza v. Marriott Int'l Inc.*, No. 2:24-CV-04120-AB-JPR, 2024 WL 4100865, at *4 (C.D. Cal. Sept. 6, 2024) (treating the different figures in defendant's opposition as an "amendment to the calculation" in the notice of removal).

The Court therefore construes Defendant's Opposition as an amendment to its notice of removal and will refer to the calculations therein.

### 3. Number of Workweeks

The Court turns next to Defendant's calculation of the amount in controversy. "[I]n most wage and hour class actions, CAFA amount-in-controversy estimates are premised on three variables: (1) the total number of possible violations; (2) the frequency at which violations might have occurred; and (3) the potential cost associated with each hypothetical violation." *Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1100 (S.D. Cal. 2024). "Once each of these variables is assigned a value, the interplay between them is relatively simple in most cases; the numbers need only be multiplied together." *Id.* at 1101.

///

Here, to calculate the total number of possible violations, Defendant submits the declaration of Gaurav Khurana, Defendant's Vice President, Total Rewards and Human Resources Operations. Declaration of Guarav Khurana ("Khurana Decl.," ECF No. 13-4). Mr. Khurana declares Defendant has employed 342 hourly non-exempt employees since November 21, 2020. *Id.* ¶ 5. Defendant then assumes a Class Period extending from May 27, 2020 (4 years and 178 days prior to the filing of Plaintiff's Complaint) to April 3, 2025 (the filing of Defendant's opposition). ECF No. 13 at 10. From the above, Defendant estimates that the total number of workweeks at issue (assuming every employee worked every day) to be 86,526 calculated by multiplying the number of non-exempt employees with the number of workweeks between May 27, 2020 and April 3, 2025 (342 * 252). *Id.* Finally, Defendant "conservatively estimates" that the 342 employees at issue only worked for 75% of all possible workweeks—arriving at 64,638 workweeks. *Id.* Defendant's use of the 64,638 figure for estimated workweeks is used in its calculation of the value of Plaintiff's claim for lost minimum wages, lost overtime wages, untimely payment of wages, and also affects Defendant's estimate of Plaintiff's claim for attorneys' fees. *Id.* at 11, 13–54.

In her Reply, Plaintiff contends Defendant's calculations are flawed because Defendant unreasonably assumes that the number of class members working throughout the entirety of the Class Period was always 342. ECF No. 14 at 5. The Court agrees. "[I]n a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). Here, Defendant's estimate of the number of workweeks at issue is predicated on its estimate that the number of non-exempt workers it employed remained constant between May 27, 2020 and April 3, 2025. This assumption, however, lacks any support. Mr. Khurana does not attest, for example, that the number of California non-exempt workers Defendant employed remained consistent in that time period. *See* Khurana Decl.; *see Salcido v. Evolution Fresh, Inc.*, No. 214CV09223SVWPLA, 2016 WL 79381,

at *2 (C.D. Cal. Jan. 6, 2016) (holding estimate of number of workweeks was reasonable given human resource executive's "firsthand knowledge that the number of California employees [had] been relatively constant in the time period"). Instead, Mr. Khurana attests that since November 21, 2020, at least 130 hourly non-exempt employees separated from DeVry. Khurana Decl. ¶ 7.

Presumably, Defendant could have calculated the actual number of workweeks at issue in this case by referring to its payroll records for the hire and termination dates of its non-exempt employees. Defendant provides no explanation for why it did not take this step. *Compare Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 721 (N.D. Cal. 2023) (holding 500,000 work week figure was reasonable as it was based on number of employees working during the relevant period and their hire and termination dates) *with Tehrani v. Macys W. Stores, Inc.*, No. LACV1507286JAKEX, 2016 WL 1559085, at *7 (C.D. Cal. Apr. 18, 2016) ("By assuming that the same number of employees worked throughout the year and that those employees worked consistently on the same days throughout the year, when [defendant] had access to the accurate numbers, [defendant] has made an assumption not grounded in real evidence.") (internal quotation marks omitted); *Blevins v. Republic Refrigeration, Inc.*, No. CV1504019MMMMRWX, 2015 WL 12516693, at *12 (C.D. Cal. Sept. 25, 2015) (holding that defendant's estimate as to the amount in controversy was "not reliable" where defendant had "failed to determine how many of the 201 individuals who worked for it at some point during the four years preceding the filing of this lawsuit were employed for the entire four years, and how many were employed for only a portion of that time."); *Moore v. Urb. Outfitters Wholesale, Inc.*, No. C 13-02245 JSW, 2014 WL 2212080, at *2 (N.D. Cal. May 28, 2014) (holding that defendant's estimate of the amount of controversy "which assumes time worked, estimates missed overtime per week without reference to actual workweeks worked, and estimates number of employees working at any one time, is unsupported by underlying facts, is speculative, and falls short of meeting the preponderance of the evidence burden."); *Ornelas v. Children's Place Retail Stores, Inc.*, No. LA CV13-02226 JAK, 2013 WL

2468388, at *4 (C.D. Cal. June 5, 2013) (holding defendant failed to present "basic, jurisdictional evidence" where it did not obtain additional evidence regarding its current and former employees, including "average period of employment").

In this jurisdictional analysis, the Court will not "supply further assumptions of its own." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). For these reasons, the Court holds Defendant has not met its burden of proving that the amount of controversy requirement has been met in this case.

### B.   Supplemental Jurisdiction

Defendant next contends that even if the Court lacks CAFA jurisdiction over the instant case, the Court can retain supplemental jurisdiction of the instant dispute in light of the separately filed *DeVry II* case. ECF No. 13 at 17.

Defendant's arguments fail for two reasons. First, under the general removal statute:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added). However, "[s]upplemental jurisdiction is not the same as original jurisdiction and, therefore, cannot confer a right to removal." *See Ogaz v. Honeywell Int'l, Inc.*, No. EDCV21740JFWKKX, 2021 WL 2822400, at *3 (C.D. Cal. July 7, 2021); *see also Andy Invs. LLC v. Potter,* No. 2:25-cv-00384-LK, 2025 WL 1155862, at *3 (W.D. Wash. Apr. 21, 2025) ("Without removal jurisdiction, the Court cannot have supplemental jurisdiction.") (collecting cases). As such, even if the Court had jurisdiction over *DeVry II*, Defendant could not invoke supplemental jurisdiction as a basis for the instant case's removal.

///

///

///

///

Second, under the supplemental jurisdiction statute:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. 1367(a). The supplemental jurisdiction statute "does not authorize supplemental jurisdiction over free-standing state law claims that are related to a *separate* action over which the court has jurisdiction." *Bank of New York Mellon v. Palmer*, No. 117CV00707DADSKO, 2017 WL 2791662, at *2 (E.D. Cal. June 28, 2017) (collecting cases). Again, even if the Court had jurisdiction over *DeVry II*, that would not provide a basis for supplemental jurisdiction over *this* action.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's motion to remand and **REMANDS** this action to the Superior Court of California, County of San Diego. Defendant's motion to consolidate is **DENIED** as moot.

The Clerk of Court is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

Dated: May 21, 2025

_____
Hon. Robert S. Huie
United States District Judge